**WHEATLAND COLD STORAGE AND MEAT PROCESSING, INC., Les C. Leal, and Antonia Leal, Appellants (Defendants),**

**v.**

**Edgar WILKINS, Appellee (Plaintiff).**

**No. 85–24.**

Supreme Court of Wyoming.

Aug. 21, 1985.

---

George Santini and Charles E. Graves of Charles E. Graves & Associates, Cheyenne, for appellants.

Eric M. Alden, Wheatland, for appellee.

Before THOMAS, C.J., and ROONEY, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal asks whether the trial court erred in refusing to set aside an execution sale wherein a judgment was sold for $250 and later turned out to have a value of $80,000. Appellants claim the trial court had equitable power to set aside the execution sale and raise the following issue:

"Whether the district court has the power to oversee execution upon judgments issued under its auspices to prevent inequity."

We will affirm.

The facts and procedural history of the case are long and complex. Appellants Wheatland Cold Storage and Meat Processing, Inc. (hereinafter Wheatland Cold Storage), and Les C. Leal and Antonia Leal (hereinafter the Leals), were sued upon a $15,000 note and for fraudulent misrepresentation by appellee Edgar Wilkins on October 22, 1980. Pursuant to a confession of judgment, appellee obtained a judgment filed August 7, 1981, for $21,419.84 on the $15,000 note including interest and attorney fees. The fraudulent misrepresentation allegation was dismissed.

Appellee was unable to execute on the judgment and, therefore, an examination of debtor was held which disclosed two equitable assets held by appellants subject to execution: one, a judgment rendered in a separate proceeding in federal district court in favor of appellants in the principal amount of $110,055.81, together with accrued interest dated June 27, 1980; and two, the interest of Wheatland Cold Storage in a lease agreement with option to purchase real property upon which the business was located. Appellee subsequently received an oral order from the district court authorizing him to execute upon appellants' equitable assets.

On March 2, 1982, appellee noticed that appellants' federal judgment of $110,055.81 was to be sold at an execution sale on April 7, 1982. Appellee subsequently purchased the judgment at the sale for the sum of

$250. Appellants then petitioned the court to have the execution sale set aside on the grounds that the price paid for the judgment was disproportionate to its value. Such petition was denied by the district court since the court found there was no evidence that the price was inadequate or that the sale was otherwise improperly conducted:

"There is no contention by the Defendants that the sale was not properly conducted or that there was improper notice or that the Plaintiff in any way failed to comply with the legal requirements for a valid sale. At the time of the hearing on the Petition, the petitioners' only contention was that there was a gross inadequacy of the price so as to shock the conscience of the Court, but Defendants did not introduce any evidence as to what a fair price would have been. Defense counsel was present at the sale but did not raise the bid of the Plaintiff. Defendants did not offer to obtain a higher price at a resale, either by their own bid or that of another, nor did they offer to pay the costs and expenses of a resale."

On June 4, 1982, appellee noticed the execution sale of appellants' second equitable asset, namely, the equitable interest of Wheatland Cold Storage in the lease agreement with option to purchase real property upon which the business was situate. This sale was to be held on July 7, 1982, but was postponed when appellants filed a petition for bankruptcy in federal court. The bankruptcy petition was eventually dismissed and appellee again sought to execute upon the lease agreement. Such sale was eventually held and appellee purchased the interest in the lease agreement for the amount remaining due on its judgment plus interest and costs accrued.

In the interim, appellee settled the federal court judgment for $80,000 (this was the judgment purchased earlier at the execution sale for $250). Thereafter appellants again sought to have the execution sale set aside.

The matter was heard on December 14, 1984, and the district court concluded it would not interfere with the execution sale of the federal judgment or the leasehold interest. At the close of the hearing, Judge Langdon stated:

"THE COURT: It is incumbent upon the Court that the property seized for sale can be sold. I hear you, Mr. Santini, I hear every word you say, but what goes through my mind in this particular case is supposing that, that the plaintiff had sold this to somebody else for $250, or $500, and it turned into—I use the word 'windfall' because that's a common name for it, of $80,000. Would it be—Would it be equitable to say that the plaintiff gave this away, more or less to some third person and therefore he missed a good deal?

"I look at it as Mr. Alden looked at it. This is an increase in value of something that they had no idea was worth that much and it turned out to be a good deal. And I don't think that I have any authority to keep them from executing on this thing.

"I can assure you that if I thought I did, I would. But I don't think I do.

"This sale was sold, it was sold on the front steps of the Platte County Courthouse, 2:00 on the 7th day of April, 1982, and it was sold for $200—Well, a net of $240, less, of course, the cost of publication and anything like that. And as far as I'm concerned, that's what the value of the thing was at that time, and subsequent changes I don't believe are something the Court can get into."

The court subsequently entered its order, finding:

"1. That the Plaintiff had seized and levied upon the interests of Defendant Wheatland Cold Storage and Meat Processing, Inc., as early as June of 1982.

"2. That at that time the value of the federal judgment previously sold in execution was unknown beyond that amount realized at the execution sale and that the eventual settlement amount received under that federal judgment was the result of an increase in value after its execution sale hereunder.

"3. That the Plaintiff has made continuing efforts to sell the leasehold interest levied upon up to and including the execution sale set for September 5, 1984, and postponed pending the determination of this motion.

"4. That after the Plaintiff's judgment lien attached to the leasehold interest said interest was sold and assigned by the Defendants to CRT, Ltd., a Colorado corporation, and that the Defendants herein have no further interest in that leasehold and therefore would be neither benefitted nor harmed by the execution sale of that asset.

"5. That the Defendants' motion should be denied in so far as it relates to the leasehold interest and that the Plaintiff should be allowed to continue with the execution sale of that leasehold interest. "NOW, THEREFORE, IT IS HEREBY ORDERED that the Defendants' Motion to Enter Satisfaction of the judgment be and it hereby is denied in so far as the Plaintiff's execution sale of the leasehold interest is concerned and that this Court's earlier order postponing that sale be lifted and the Plaintiff be allowed to pursue the execution sale of that asset. This order shall not prejudice the parties hereto in raising similar arguments in so far as they may relate to other assets of the Defendants at some time in the future."

·Appellants contend Judge Langdon erred when he stated he believed he was without power to set aside the execution sale of the federal judgment. Appellants then cite authority for the general proposition that courts have the equitable power to restrain execution upon a judgment which is otherwise final where execution would result in injustice. *Marine Insurance Company of Alexandria v. Hodgson*, 3 U.S. (7 Cranch 332) 557, 3 L.Ed. 362 (1813); and 33 C.J.S. Executions § 151 (1942).

▮ It is true that the district courts of this state "* * * have original jurisdiction of all causes both at law and in equity * *." Wyoming Constitution, Art. 5, § 10. We believe appellants are correct when they claim courts have the equitable power to restrain execution upon a judgment which would result in an injustice. Here, there has been no showing that the district court abused its discretion in refusing to set aside the execution sale of the federal judgment. Appellants claim the trial judge erred in stating he believed he lacked authority to intervene in the sale, but such error seems moot in light of the fact that in the court's written order, set forth above, the judge reviewed the facts of the present case, as well as the execution of the judgment. Therefore, it seems the court did what the appellants asked, but the court's result was opposite to that urged by appellants.

▮ We have previously held that if a district court's judgment is sustainable on any proper legal grounds appearing in the record, it must be sustained. *Hurst v. State*, Wyo., 698 P.2d 1130 (1985); *37 Gambling Devices (Cheyenne Elks Club and Cheyenne Music and Vending, Inc.) v. State*, Wyo., 694 P.2d 711 (1985); *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452 (1983). And in the recent case of *McAteer v. Stewart*, Wyo., 696 P.2d 72 (1985), we held that a court's signed written order takes precedence over a prior oral order.

▮ Such principles are applicable here. While the trial judge's statement that he did not think he had the authority to intervene may have been error, such error was rendered harmless by his subsequent written order which reviewed and ruled upon the very issues raised by appellants. When viewed in context, the judge may have only been referring to the present case when he made the statement that he did not think he could interfere with the execution sale. Ordinarily, it is within the discretion of the trial court to decide whether or not to enjoin an execution sale. 33 C.J.S. Executions § 151 (1942). Therefore, we will only disturb the findings of the district court upon a clear showing of an abuse of discretion. *Bacon v. Carey Company*, Wyo., 669 P.2d 533 (1983); and *Reno Livestock Corporation v.*

*Sun Oil Company* (Delaware), Wyo., 638 P.2d 147 (1981).

We agree with appellee when he asserts any alleged error in the court's statement was harmless. Rule 7.04, Wyoming Rules of Appellate Procedure. Appellants have failed to carry their burden of establishing that the alleged error in the present case was prejudicial. *Anderson v. Bauer,* Wyo., 681 P.2d 1316 (1984); and *Cervelli v. Graves,* Wyo., 661 P.2d 1032 (1983).

Affirmed.

THOMAS, Chief Justice, specially concurring.

I certainly concur in the result reached in this instance by the majority. Unfortunately I find I have an entirely different perception of the issues posed than my brethren on the court. The appellants do not contend that the trial court erred in refusing to set aside the execution sale on the judgment. I quote from the appellants' brief:

"* * * Although there was a motion to set aside the April 7, 1982 sale on the grounds that the value received for the federal judgment was so disproportionate as to actual worth as to shock the conscience of the court, no evidence was presented at the time of hearing upon the motion to set aside execution sale as to the actual value of said judgment, and the court entered an order overruling the objections to the sale on June 15, 1982. The court's order overruling objections to the execution sale was not appealed *and the appellants are barred by res judicata from asserting that such ruling was error at this late juncture.*
"This does not mean that the District Court is without power to act to grant Appellants relief from *further execution* upon the judgment by the Appellee. * *"
(Emphasis added.)

It is my understanding that the thrust of the appeal is that the district court should have interfered with the sale of the leasehold interest because the appellees already had been paid in full on their judgment. I quote again from the appellants' brief:

"CONCLUSION

"Based upon the foregoing argument and principles, appellants respectfully request that this court enter an order reversing the District Court's order of January 2, 1985, and remanding the matter to the District Court for entry of an order setting aside the execution sale of the leasehold interest and requiring the appellee to enter satisfaction of judgment in the above entitled matter."

It is clear that the appellants no longer own any part of the alluded-to leasehold interest. As the majority opinion notes, the trial court found that the appellants had sold and assigned their leasehold interest to a third party, and they have no further interest in that leasehold. Under the circumstances I cannot perceive how the appellants have standing to prosecute this appeal. In *Washakie County School District No. 1 v. Herschler,* Wyo., 606 P.2d 310, 317 (1980), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980), this court said:

"Standing is a concept used to determine whether a party is sufficiently affected to insure that a justiciable controversy is presented to the court. 67A C.J.S. Parties § 12, p. 662. It is a necessary and useful tool to be used by courts in ferreting out those cases which ask the courts to render advisory opinions or decide an artificial or academic controversy without there being a palpable injury to be remedied. * * *"

Although the court determined that standing was present in that case, it seems to me that an application of those propositions to this case discloses with convincing clarity that standing does not exist with respect to these appellants.

Under the circumstances I think the appropriate disposition by this court is to dismiss the appeal because of lack of standing on the part of the appellants. The end result, of course, is that the judgment of the district court would stand, which is the same as the result espoused by the majority.